**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

Maria Lucia VALLADARES RIVAS

     Plaintiff,

vs.

Susan DIBBINS, Chief, Administrative Appeals
Office of U.S. Citizenship and Immigration Services;

Joseph B. EDLOW, Director, U.S. Citizenship and
Immigration Services;

Markwayne MULLIN, Secretary, U.S. Department
of Homeland Security;

     Defendants.

Civil Action No: _____

Case No: _____

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND REVIEW OF**
**AGENCY DECISION UNDER THE ADMINISTRATIVE PROCEDURES ACT**

NOW COMES the Plaintiff, Maria Lucia Valladares Rivas ("Plaintiff" or "Ms. Valladares

Rivas"), who complains of the defendants as follows:

**INTRODUCTION**

1. Plaintiff brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§

   701-706, seeking review of the final agency decision of the Administrative Appeals Office

   ("AAO") of the U.S. Citizenship and Immigration Services ("USCIS"), dated April 10,

   2025, which dismissed her administrative appeal of the improper denial of her Form I-914,

   Application for T Nonimmigrant Status ("T Nonimmigrant Status") and Form I-192,

   Application for Advance Permission to Enter as Nonimmigrant ("I-192 Application"). *See*

   Exhibits A, D, and E.

2. The AAO's decision is arbitrary, capricious, an abuse of discretion, not in accordance with law, and in excess of statutory authority in violation of the APA. Specifically, Defendants:

   a. Ignored and mischaracterized substantial, credible evidence of coercion, threats of retaliation, threats of abuse of the legal process, physical injury, and severe psychological harm. *See* Exhibits A, C, F, and J;

   b. Applied an unlawfully narrow and incorrect definition of "involuntary servitude," relying on dictionary definitions of "servitude" inconsistent with governing statutory and regulatory text. *See* Exhibit A at ¶ 11;

   c. Required corroboration exceeding the "any credible evidence" standard under 8 C.F.R. § 214.204. *Id.*;

   d. Failed to consider critical aspects of the problem, including coercion through immigration threats, economic retaliation, medical duress, and psychological trauma, as required by *Motor Vehicle Manufacturers Association v. State Farm*, 463 U.S. 29 (1983). *Id.*;

   e. Relied on legally irrelevant factors, including that Plaintiff was paid contrary to the Trafficking Victims Protection Act ("TVPA") and agency policies. *Id.*; and

   f. Offered explanations contradicted by its own factual findings. *Id.*

3. Plaintiff seeks declaratory and injunctive relief, including vacatur of the AAO's decision and remand to USCIS with instructions to adjudicate her applications under the correct legal standards.

**PARTIES**

4. Plaintiff is a native and citizen of El Salvador, who resides in Dallas, Texas, and applied for T Nonimmigrant Status as a victim of a severe form of human trafficking. She is directly and adversely affected by Defendants' unlawful decisions.

5. Defendant Markwayne MULLIN is the Secretary of the Department of Homeland Security ("DHS"), which is the cabinet department responsible for, among other things, administering and enforcing the nation's immigration laws. 6 U.S.C. § 251. He is also authorized to delegate such powers and authorities to subordinate employees of DHS, including, but not limited to, USCIS. He is sued in her official capacity.

6. Defendant Joseph B. EDLOW is the Director of USCIS. He is charged with supervisory authority over all USCIS operations. He is sued in his official capacity.

7. Defendant Susan DIBBINS is the Chief of the AAO of USCIS, the office responsible for conducting administrative review of USCIS officers' decisions regarding immigration benefit requests to promote consistency and accuracy in the interpretation of immigration law and policy. She is sued in her official capacity.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction under 28 U.S.C. §§ 1331.

9. The APA provides a cause of action and allows for a waiver of sovereign immunity. 5 U.S.C. § 702.

10. The AAO's decision is a final agency action under 5 U.S.C. § 704 because it marks the consummation of the agency's decision-making process and determines Plaintiff's legal rights.

11. Venue lies in the Southern district of Texas because the Plaintiff resides within this District and a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in the District. 28 U.S.C. §§ 1391(b), (e).

## STANDING

12. The APA provides the right of review for any individual "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Defendants' improper denial of Plaintiff's T-Visa Application and I-192 Application has adversely affected her ability to obtain lawful status in the United States and access resources only available to victims of human trafficking. Plaintiff thus falls within APA's standing provisions.

## STATUTORY AND REGULATORY BACKGROUND

13. In 2000, Congress enacted the Trafficking Victims Protection Act ("TVPA"), Pub. L. No. 106-386, 114 Stat. 1464 (2000), to combat human trafficking, protect victims, and strengthen enforcement mechanisms. The TVPA created the T-Visa to enable victims of severe trafficking to remain in the United States while assisting law enforcement and rebuilding their lives.

14. To be eligible for T nonimmigrant status, an applicant must demonstrate that: (1) they are or have been a victim of a severe form of trafficking in persons; (2) they are physically present in the United States or at a port-of-entry thereto; (3) they have complied with reasonable requests for assistance from law enforcement, unless they warrant an exemption due to age or trauma; and (4) they would suffer extreme hardship involving unusual and severe harm upon removal. *See* 8 U.S.C. § 1101(a)(15)(T); 8 C.F.R. § 214.202.

15. The application must include a detailed, signed personal statement and any credible supporting evidence. *See* 8 C.F.R. § 214.204(c). Credible evidence is defined as that which is "plausible, sufficiently detailed, and internally and externally consistent." *See* Exhibit J.

16. Inadmissible applicants must also file an I-192 Application for Advance Permission to Enter as Nonimmigrant ("Waiver Application"). *See* 8 C.F.R. § 214.204(d).

17. Under the TVPA, a severe form of trafficking in persons must involve both a particular means (force, fraud, or coercion) and a particular end or a particular intended end (sex trafficking, involuntary servitude, peonage, debt bondage, or slavery); or, if labor or services have not been performed, the applicant must establish that they were recruited, transported, harbored, provided, or obtained for the purposes of subjection to sex trafficking, involuntary servitude, peonage, debt bondage, or slavery. *See* 8 C.F.R. 214.206(a)(1)-(2).

18. An applicant for T Nonimmigrant Status must also demonstrate that, at the time of application, they are physically present in the United States on account of at least one of the following: (1) are currently being subjected to a severe form of trafficking in persons; (2) were liberated from a severe form of trafficking by a law enforcement agency (LEA) at any time prior to filing the application; (3) escaped a severe form of trafficking before an LEA was involved, at any time prior to filing the application; (4) were subjected to a severe form of trafficking at some point in the past, and their current presence is directly related to the original trafficking, regardless of the length of time that has passed; or (5) have been allowed entry for participation in the detection, investigation, prosecution, or

judicial processes associated with an act or perpetrator of trafficking. *See* 8 C.F.R. § 214.207(a).

19. To establish that an applicant has complied with reasonable requests for assistance from LEAs, "an applicant must, at a minimum, contact an LEA with proper jurisdiction to report the acts of a severe form of trafficking in persons. Credible evidence documenting a single contact with an LEA may suffice." *See* 8 C.F.R. § 214.208.

20. Under the TVPA, an applicant must also establish that removal from the United States would result in extreme hardship involving unusual and severe harm. *See* 8 C.F.R. § 214.209. Factors to consider in determining extreme hardship include, but are not limited to, the following: the age of the applicant, both at the time of entry and at the time of the application; family ties in the United States; length of residence in the United States; health of the applicant and the availability and quality of any required medical treatment in the applicant's country of nationality, including length and cost of treatment; political and economic conditions in the country in which the applicant would be returned; possibility of other means of adjusting status in the United States; applicant's immigration history; age, maturity, and personal circumstances of the applicant; nature and extent of the psychical and psychological consequences of having been a victim of a severe form of trafficking; impact of the loss of access to the U.S. courts and criminal justice system for purposes related to the incident of trafficking; reasonable expectation that the existence of laws, social practices, or customs in the country applicant would be returned would penalize the applicant severely for having been the victim of a severe form of trafficking; likelihood of the occurrence of revictimization upon repatriation and the need, ability, and willingness of foreign authorities to protect the applicant; likelihood

that the existence of civil unrest or armed conflict would threaten the applicant's individual safety; and the current or likelihood of future economic harm. *See* 8 C.F.R. § 214.209(b)(1)-(9); *see also* Exhibit J.

21. The applicant has the burden to demonstrate eligibility for T Nonimmigrant Status by a preponderance of the evidence through the submission of any credible evidence. *See* 8 C.F.R. § 214.204(l). USCIS will review all evidence submitted and consider the totality of the evidence in evaluating a T-Visa Application. *Id.*

22. Under the APA, courts must "hold unlawful and set aside" agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 5 U.S.C. § 706.

## STATEMENT OF FACTS

23. Plaintiff was born on September 21, 1982, in El Salvador. *See* Exhibits C, F, and J.

24. Plaintiff applied for T Nonimmigrant Status on March 27, 2023. *See* Exhibits H-I.

25. On April 23, 2024, USCIS sent Plaintiff a Request for Evidence ("RFE") instructing her to submit additional evidence to establish that she is a victim of a severe form of trafficking in persons, her physical presence in the United States is related to her trafficking victimization, and that she has complied with reasonable request from a law enforcement agency. *See* Exhibit G.

26. Plaintiff filed her response to the RFE with supporting documents that addressed each of the concerns in the RFE and provided further clarification and evidence in support of her T-Visa Application. *See* Exhibit F.

27. On October 23, 2024, USCIS denied her T-Visa Application and I-192 Application. *See* Exhibits D-E.

28. On November 22, 2024, Plaintiff filed an I-290B Notice of Appeal on the basis that USCIS made erroneous conclusions of law, misapplied regulations, and failed to observe its own policies when it denied her I-914 Application with a supplemental brief and supporting evidence. *See* Exhibits B-C.

29. On April 10, 2025, the AAO dismissed Plaintiff's Appeal. *See* Exhibit A.

30. Plaintiff was subjected to labor trafficking while employed at Jack in the Box by her employers, from 2009 to 2020. She submitted: a supplemental declaration, copies of pay stubs, a copy of the police report where Plaintiff was a victim of armed robbery at work resulting in her injury, records of the subsequent medical care she required from the injury during the robbery, letters of support, medical records showing continued counseling, and other additional documents, demonstrating the coercion, intimidation, threats of abuse of legal process, threats of retaliation, and exploitation that her traffickers subjected her to, compelling her to continue working for them. *See* Exhibits C, F, and J.

31. Plaintiff's evidence describes classic trafficking under 22 U.S.C. § 7102 and 8 C.F.R. § 214.201, which include coercion, abuse of the legal process, immigration threats, and exploitation, none of which require physical restraint or confinement.

32. Despite this evidence, the AAO nevertheless concluded Plaintiff was not a victim of a severe form of trafficking because, according to the AAO, "The record lacks sufficient evidence regarding specific threats, including of physical restraint or injury, to induce the Applicant to work against her will, and the evidence is insufficient to demonstrate that her employer abused or threatened to abuse the legal process if she did not work." *See* Exhibit A, at ¶ 12. This conclusion relies on overly narrow, extrinsic dictionary definitions of "servitude," rather than applying the definitions explicitly outlined within USCIS's own

regulations and policies. *Id*. at ¶ 11. It shows that the AAO incorrectly equated "force" with physical compulsion, which contradicts 22 U.S.C. § 7101-7102 and 8 C.F.R. § 214.201. *Id*.

33. The AAO further stated that Plaintiff was not placed in servitude because she "continued to work for her employer for over ten years for financial reasons." *Id*. at ¶ 12. This factor is legally irrelevant as neither the TVPA nor its regulations require unpaid labor to establish involuntary servitude. Further, this factor directly contradicts USCIS policy in evaluating involuntary servitude, which states that "a worker who is paid some of all the promised wages may still be a victim of trafficking." *See* Exhibit K.

34. The AAO improperly rejected Plaintiff's consistent evidence as "insufficient," despite affidavits, medical records, and corroborating documentation that were provided, despite acknowledging she suffered these harms. *See* Exhibit A.

35. The AAO also failed to apply the "any credible evidence" standard as required by regulation at 8 C.F.R. § 214.204.

## COUNT ONE
### (Violation of The APA – Arbitrary and Capricious (5 U.S.C. § 706(2)))

36. Plaintiff repeats, alleges, and incorporates the foregoing paragraphs as if fully set forth herein.

37. Defendants acted arbitrarily and capriciously under *State Farm* because they:

   a. Failed to consider key evidence and failed to explain why the immigration threats did not meet the definition of abuse of legal process under 22 U.S.C. § 7102 and 8 C.F.R § 214.201;

   b. Failed to consider essential aspects of the problem, including coercion via threats of deportation, retaliation, medical duress, intimidation, and psychological harm. *Id*.;

c.  Relied on factors Congress did not intend – such as Plaintiff being paid. *Id.*;

d.  Ignored substantial evidence consistent with Plaintiff's claim, including police reports, declarations, and medical records. *See* Exhibits C, F, and J;

e.  Adopted an explanation contradicted by the AAO's own factual findings. *See* Exhibit A;

f.  Applied an unlawfully narrow definition of involuntary servitude inconsistent with the TVPA and its purpose. *Id.*; and

g.  Demanded heightened corroboration beyond the statutory "any credible evidence" standard. *Id.*

38. The decision lacks a rational connection between the facts found and the conclusions reached.

**COUNT TWO**
**(Violation of The APA – Contrary to Law (5 U.S.C. § 706(2)))**

39. Plaintiff repeats, alleges, and incorporates the foregoing paragraphs as if fully set forth herein.

40. The AAO's decision is not in accordance with the law and exceeds statutory authority because it:

a.  Substituted an impermissibly narrow interpretation of "servitude" inconsistent with the TVPA and its implementing regulations. *See* 22 U.S.C. § 7102; 8 C.F.R. § 214.201; *see also* Exhibit K;

b.  Relied on extrinsic dictionary definitions instead of statutory and regulatory text in defining "servitude." *See* Exhibit A, at ¶ 11;

c.  Failed to demonstrate the agency actually engaged in a holistic review of the record, a legal requirement for all T-visa adjudications;

d.  Applied a legally erroneous standard and failed to consider how economic coercion functions in labor trafficking cases by treating financial need as dispositive, and ignoring the employer-created coercive conditions; and

e.  Failed to follow USCIS's binding policies and regulations. *See* Exhibit K.

41. The AAO's interpretation of the governing trafficking statutes receives no Chevron deference, and the Court must independently interpret the statutory terms. The AAO's reliance on extrinsic dictionary definitions of "servitude," rather than the definitions Congress enacted in 22 U.S.C. § 7102 and the regulatory definitions in 8 C.F.R. § 714.201, is therefore contrary to law.

42. Nor is any Auer/Kisor deference warranted. Under *Kisor v. Wilkie*, 130 S. Ct. 2400 (2019), an agency's interpretation of its own regulations is entitled to deference only where the regulation is genuinely ambiguous, and the agency's interpretation is reasonable and authoritative. The AAO's interpretation contradicts the text and structure of the applicable regulations, as well as USCIS's own policies on the interpretation of "servitude," and relied on non-regulatory dictionary sources; therefore, it receives no deference.

43. At most, the AAO's interpretation is evaluated under Skidmore and is owed no weight because it lacks the "power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). The AAO disregarded controlling statutory definitions, misapplied USCIS's own regulations, and provided reasoning inconsistent with the intent of Congress in enacting the TVPA. Its interpretation is therefore unlawful under 5 U.S.C. § 706.

### COUNT THREE
**(Violation of the APA – Failure to Observe Procedure Required by Law (5 U.S.C. § 706(2))**

44. Plaintiff repeats, alleges, and incorporates the foregoing paragraphs as if fully set forth herein.

45. The AAO failed to observe procedure required by law because it:

    a.   Failed to apply the "any credible evidence" standard required by 8 C.F.R. § 214.204;

    b.   Failed to adjudicate the statutory elements of physical presence and cooperation with law enforcement; and

    c.   Relied on non-regulatory dictionary definitions instead of promulgated regulations and its own definitions supplied in its own policies regarding eligibility for T Nonimmigrant Status. *See* Exhibit A, at ¶ 12.

46. These procedural defects independently require vacatur.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays that this Court grant the following relief:

1. Declare that Defendants' denial of Plaintiff's T-Visa Application, I-192 Application, and dismissal of her appeal were arbitrary, capricious, and contrary to law in violation of the APA;

2. Vacate and set aside the AAO's decision of April 10, 2025;

3. Remand the case to USCIS for new adjudication consistent with the correct legal standards under the TVPA, 8 C.F.R. § 214, and the USCIS Policy Manual, Vol. 3, Pt. B (2025);

4. Enjoin Defendants from initiating removal or taking adverse immigration action during the pendency of the remand proceedings;

5. Award attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) and 5 U.S.C. § 504 if applicable; and,

6. Order any further relief this Court deems just and proper.

Dated: June 3, 2026

Respectfully Submitted,

_____

Rachel L. Rado, Esq. | BBO #: 682095
Attorney for the Plaintiff
Law Offices of Rachel L. Rado
175 Portland Street, 2nd Floor
Boston, MA 02114
Tel: 617-871-6030
Email: rachel@rachelradolaw.com